IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LUXOTTICA OF AMERICA, INC., | : |
| *Plaintiff*, | : Case No. 1:25-cv-727 |
| v. | : Judge Jeffery P. Hopkins |
| WAYNE WILLIAM BELANGER, *et al.*, | : |
| *Defendants*. | : |

# OPINION AND ORDER

For anyone that has purchased eyewear, odds are they are familiar with global-eyewear distributor, Plaintiff Luxottica of America, Inc. ("Plaintiff" or "Luxottica"), and its Pearle Vision brand. Luxottica operates more than 500 eye care centers throughout the United States, Canada, and Puerto Rico, and also has numerous optical retail stores throughout the United States. Not all of those retail stores are operated by Luxottica—some are operated by independent franchisees that have been granted a limited license and authority to display the Pearle Vision marks in their stores. This case concerns a former franchisee, Defendant Bright Eyes Clinic, LLC ("Bright Eyes"), that is alleged to have used those marks beyond termination of its license, and its operators, Defendants Wayne William Belanger and Angela Dawn Belanger (the "Belangers") (collectively, "Defendants"), who are alleged to have violated related non-competition agreements they entered with Luxottica.

In its verified complaint, Luxottica asserts claims for trademark infringement and unfair competition under the Lanham Act and common law, along with claims for breach of the license agreement, breach of non-compete agreements, breach of personal guaranties, and

unjust enrichment. Compl., Doc. 1. Luxottica now seeks a temporary restraining order on its trademark infringement and unfair competition claims. For the reasons discussed more fully below, the Court finds that Luxottica is entitled to temporary injunctive relief. Accordingly, Luxottica's motion for a temporary restraining order (Doc. 2) is **GRANTED**.[1] This order will remain in force and effect for 14 days, unless extended by agreement of the parties, or, for good cause shown, by further order of this Court under Fed. R. Civ. P. 65(b)(2).

## I. LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy that should only be granted if the movant can clearly show the need for one." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). To establish entitlement to relief under Rule 65, the movant must prove its case by clear and convincing evidence. *Hartman v. Acton*, No. 2:20-cv-1952, 2020 WL 1932896, at *2 (S.D. Ohio Apr. 21, 2020) (citations omitted).

In determining whether a temporary restraining order shall issue, courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (citation omitted). These same factors apply to preliminary injunctions. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) ("The standard for issuing a temporary restraining order is logically the same as

---

[1] Pursuant to S.D. Ohio Civ. R. 65.1(a), this Court held an informal preliminary conference on October 14, 2025. Attorney Jeff Mando appeared in a limited capacity on behalf of Defendants. He represented to the Court that he had yet to be formally retained as counsel but was asked to appear on their behalf. On October 15, 2025, Mr. Mando advised the Court that he had been formally retained. He further advised that Defendants do not consent to a Temporary Restraining Order, but indicated that Plaintiff's proposed order was consistent with the Court's oral ruling during the conference on October 14, 2025.

for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo.") (cleaned up). The first factor, likelihood of success, is not necessarily dispositive. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."). If the movant's showing on that prong is lacking, preliminary relief is permissible if there are at least "serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if [a TRO] is issued." *Frisch's Rest.*, 759 F.2d at 1270 (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

It is important to note, however, that the burden of persuasion remains on the party seeking injunctive relief—here, Luxottica. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Though Luxottica "must show more than a mere possibility of success," it need not "prove [its] case in full." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

## II. ANALYSIS

Having set forth the applicable standard, the Court will now sequentially consider the factors that govern injunctive relief. Upon weighing all four factors, the Court finds that Luxottica has shown entitlement to a temporary restraining order.

### A. Likelihood of Success on the Merits

Luxottica's request for injunctive relief turns on its trademark infringement and unfair competition claims. Because a key element of a trademark infringement claim, likelihood of

confusion, "is the essence of an unfair competition claim," *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996), the Court will train its efforts on Luxottica's claim for trademark infringement.

1. Trademark Infringement

The Lanham Act has long prohibited trademark infringement and offered trademark owners ways to seek redress. To prove trademark infringement and seek redress here, Luxottica must show: "(1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264 (6th Cir. 2021) (quotations omitted). For purposes of temporary relief, Luxottica has shown these elements.

i. *Ownership*

First, Luxottica has established that it owns numerous registrations for Pearle Vision marks, including those alleged to be used by Defendants. Because the evidence suggests that Luxottica has registered the Pearle Vision marks, *see, e.g.*, Compl., Doc. 1, ¶ 16, Luxottica has presented a prima facie case of ownership of the marks. 15 U.S.C. § 1115(a). Though the presumption of ownership is rebuttable, nothing in the record so far suggests that the validity of the trademarks is in question. *Mt. Top Bev. Group, Inc. v. Wildlife Brewing N.B., Inc.*, 338 F. Supp. 2d 827, 832–33 (S.D. Ohio 2003) ("In order to rebut the presumption of a registered trademark's validity, the party challenging the validity of the trademark must put something more into the scales than the registrant.") (citation and internal quotations omitted). Thus, the allegations contained in the verified complaint sufficiently establish a likelihood of success as to the first prong.

ii. *Use*

Next, Luxottica has sufficiently shown that Defendants are using the Pearle Vision marks in commerce without authorization. The License Agreement between Luxottica and Bright Eyes indicates that Bright Eyes' right to use the Pearle Vision marks ceased immediately upon termination of the License Agreement, which occurred on August 23, 2025. Compl., Doc. 1, ¶ 30, 41. Yet, on September 3, 2025, a Luxottica territory franchise director visited the Bright Eyes retail store and observed the continued use of Pearle Vision marks. *Id.* ¶ 48, 52. Luxottica has therefore sufficiently shown use of the marks.

iii. *Likelihood of Confusion*

Third, Luxottica has offered evidence of the likelihood of public confusion. In assessing this, courts typically consider several factors—none of which are dispositive: (1) strength of the plaintiff's mark, (2) relatedness of the products, (3) similarity of the marks, (4) evidence of actual confusion, (5) the parties' marketing channels, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark, and (8) likelihood of product line expansion. *CFE Racing Prods. v. BMF Wheels, Inc.*, 793 F.3d 571, 592 (6th Cir. 2015) (citing *Frisch's Rest.*, 759 F.2d at 1264); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) ("[A] plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful."). That said, the Sixth Circuit has recognized that "[a] separate body of law has developed for [a] distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 464 (6th Cir. 2022). "In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: 'proof of continued,

5

unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'" *Id.* (collecting cases).

Here, as was done in the *Max Rack* case, the Court will assess likelihood of confusion under both the categorical rule and the traditional standard. Starting with the categorical rule, there is sufficient evidence to find likelihood of confusion based on Defendants' continued use of the Pearle Vision marks and their decision to hold Bright Eyes out as a Pearle Vision franchise beyond termination of the License Agreement. Compl., Doc. 1, ¶ 48, 52. It is also alleged that Defendants have continued to use Pearle Vision branding, signage, and products. *Id.* ¶ 52. And by all appearances, it looks as if the Bright Eyes store "is being run as [a Pearle Vision] optical location under a new name." *Id.* These facts bring this case squarely within the categorical rule, making a compelling case for likelihood of confusion. *See Max Rack*, 40 F.4th at 464 ("This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired.").

Setting aside the categorical rule, there is also sufficient evidence to find likelihood of confusion under the traditional standard. The first factor, strength of the mark, "focuses on the distinctiveness of a mark and its recognition among the public." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (quoting *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002)). Courts using the traditional standard engage in a two-part inquiry that focuses first on the mark's conceptual strength (*i.e.*, the mark's inherent distinctiveness), and second, on the mark's commercial strength (*i.e.*, the mark's recognition in the marketplace). *AWGI, LLC*, 998 F.3d at 265. "A mark's distinctiveness and resulting conceptual strength 'depends partly upon which of four categories it occupies: generic, descriptive, suggestive, and fanciful or arbitrary.'" *Progressive*,

856 F.3d at 428. Based on the nature of the Pearle Vision marks, Luxottica's allegation that the marks have become incontestable, and the broad recognition of Pearle Vision in the marketplace, there is enough evidence to find that the first factor—strength of the mark—favors Luxottica. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 282 (6th Cir. 1997) (explaining that a trademark becomes "incontestable" if it is not successfully challenged within five years of its registration and that an incontestable mark "is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark") (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991)).

The second factor is relatedness of the products and services. "Services and goods are related not because they coexist in the same broad industry but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *AWGI, LLC*, 998 F.3d at 266 (quoting *Leelanau Wine Cellars v. Black & Red*, 502 F.3d 504, 516 (6th Cir. 2007)) (citation omitted). By all accounts, it appears that Bright Eyes is operating much the same as when it was licensed as a Pearle Vision franchise, using the same marks and offering the same products and services. Compl., Doc. 1, ¶ 51. It is highly likely that a consumer would believe that Defendants' products come from, or are still connected with, Luxottica and Pearle Vision. Thus, there is sufficient evidence to find that the relatedness of the products and services is likely to confuse. *See AWGI, LLC*, 998 F.3d at 266 ("[I]f the parties compete directly, confusion is likely if the marks are sufficiently similar.") (quoting *Progressive*, 856 F.3d at 431).

The third factor, similarity of the marks, musters considerable weight. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283. Here, this factor requires limited analysis because, as

7

alleged by Luxottica, Defendants are not using marks *similar* to Pearle Vision, but rather, Defendants are using *the* Pearle Vision marks. Thus, there is more than enough evidence to find that this would confuse a reasonable consumer. At this stage in the proceedings, there is no evidence of actual confusion—the fourth factor. That said, "evidence of actual confusion is not necessary to show likelihood of confusion." *Progressive*, 856 F.3d at 434. "[A] lack of [actual] confusion is rarely significant" because a plaintiff need only show "a sufficient *potential* of confusion" for a successful Lanham Act claim. *Daddy's Junky Music Inc.*, 109 F.3d at 284. Thus, the fourth factor is neutral.

Under the fifth factor, the Court considers the parties' marketing channels. This consideration pertains to "how and to whom the respective goods or services of the parties are sold." *Leelanau Wine Cellars, Ltd.*, 502 F.3d at 519 (quoting *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 357 (6th Cir. 2006)). Here, Luxottica alleges that it and Defendants "use identical marketing channels" and that they "promote, advertise, and sell precisely the same products, namely retail optical products and optometric and opticians' services." Doc. 2, PageID 65. Given the substantial overlap, this factor heavily favors Luxottica.

The likely degree of purchaser care is the next factor the Court must consider. "Generally, the standard for determining whether a likelihood of confusion would arise is predicated upon an ordinary buyer exercising ordinary caution." *Progressive*, 856 F.3d at 435. A "higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication." *Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1111 (6th Cir. 1991). Luxottica alleges that it and Defendants offer "the same optometric products, at similar prices" while using the same Pearle Vision marks. Doc. 2,

PageID 65. The Court agrees that it would be difficult under these facts for an ordinary buyer, or even a more sophisticated one, to discern that Defendants no longer have an affiliation with Pearle Vision. This factor militates toward a finding of likelihood of confusion. *See Daddy's Junky Music Inc.*, 109 F.3d at 286 (explaining that "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party").

The defendant's intent in selecting the mark is the seventh factor to consider. "The intent of the defendant in a trademark action is relevant because 'purposeful copying indicates that the alleged infringer . . . believes that his copying may divert some business from the senior user.'" *Leelanau Wine Cellars*, 502 F.3d at 520 (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286). Here, Defendants are alleged to have continued to use Pearle Vision marks after being notified that the License Agreement with Luxottica has terminated. Defendants' willful use of the Pearle Vision marks beyond termination, in violation of their contractual obligations, suggests that Bright Eyes has purposefully maintained use of Pearle Vision marks in an effort to continue its business in the same retail market. This factor favors Luxottica.

The last factor concerns the likelihood that product lines will expand. "[A] 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Grp.*, 931 F.2d at 1112 (citing Restatement of Torts § 731(b) & comment c (1938)). Here, there is no evidence that Luxottica or Defendants intend to expand product lines. Thus, the Court finds that this factor is irrelevant to the present analysis.

After considering the categorical rule, and the balance of the factors under the traditional analysis, the Court finds sufficient evidence of the likelihood of public confusion.

9

As a result, Luxottica has demonstrated a likelihood of success on its trademark infringement claims, thereby clearing the first hurdle for temporary injunctive relief.

### B. Irreparable Harm

Next, the Court considers whether Luxottica would suffer irreparable harm absent relief. Harm is irreparable if it "is not fully compensable by monetary damages," *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002), or "if the nature of the [] loss would make damages difficult to calculate." *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020) (citation omitted). In the context of preliminary equitable relief, irreparability of harm is said to be an "indispensable" factor because, absent a showing of irreparable harm, "there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019); *see id.* at 326–27 ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'") (citation omitted). Thus, to show entitlement to relief, the movant's injury "must be both certain and immediate, not speculative or theoretical." *Id.* at 327 (cleaned up).

Here, because Luxottica has shown a likelihood of success on the merits of its Lanham Act claim, Luxottica is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a) ("A [party] seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation" of the Lanham Act). At this early stage in the proceedings, Defendants have not rebutted that presumption. At any rate, Luxottica has independently established that it will suffer certain and immediate harm should Defendants be allowed to continue to use the Pearle Vision marks in the Bright Eyes store.

Luxottica has shown that it will suffer irreparable harm through damage to goodwill and reputation because Luxottica does not have any control over the quality of Defendants' products and services, and there is reason to believe that consumers will infer that there is an affiliation between Luxottica and Defendants given Defendants' continued use of the Pearle Vision marks. Loss of customer goodwill "is a prime example of intangible, irreparable harm." *Southern Glazer's Distribs. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017). This "often amounts to irreparable injury because the damages flowing from such losses are difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Furthermore, in accordance with the License Agreement, Bright Eyes "agrees that any non-compliance … or any unauthorized or improper use of the Pearle Vision Systems or the Marks will cause irreparable damage to Pearle Vision and other licensed owners of Pearle Vision."[2] Compl., Doc. 1, ¶ 30.

Luxottica has thus shown that it will suffer certain and immediate harm absent injunctive relief.

### C. Harm to Others

The third prong requires an equitable balancing of harms. This means that the Court must consider any harm that Defendants or other third parties might suffer by the granting of injunctive relief. *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, 2021 WL 5834299, at *8 (S.D. Ohio Dec. 8, 2021) (quoting *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982)). However, as here, where Luxottica has shown a likelihood of success, "the 'harm to others' factor of the [injunctive relief standard] would normally favor the plaintiff as well."

---

[2] The License Agreement also provides that Luxottica is "entitled to both temporary and permanent injunctive relief" against Bright Eyes and that Bright Eyes "consents to the entry of temporary and permanent injunctions of that type." Compl., Doc. 1, ¶ 30.

11

*Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 756 (S.D. Ohio 2010) (quoting *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1462 (S.D. Ohio 1990)). The reason for this is simple: "[a] party who willfully proceeds to expend funds on infringing activities cannot claim the loss of those funds as a ground for denying preliminary injunctive relief." *Id.* (quoting *Central Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n*, 711 F. Supp. 1423, 1435 (S.D. Ohio 1989)). Balancing Defendants' harms against those that Luxottica would suffer absent injunctive relief, this Court finds that this prong strongly favors Luxottica. To the extent that Defendants may incur some harm, that harm would be self-inflicted by virtue of Defendants' continued use of the Pearle Vision marks beyond termination of the License Agreement.

### D. Public Interest

The final factor in the injunctive relief analysis is whether granting the injunction would serve the public interest. In trademark cases, it is axiomatic that the public will benefit from "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). Further, "[t]he public has a strong interest in holding private parties to their agreements." *S. Glazer's Distribs. of Ohio, LLC*, 860 F.3d at 853. Thus, granting injunctive relief here serves the public interest.

### III. CONCLUSION

Having carefully considered each of the relevant factors, the Court finds that on balance all of them weigh in favor of Luxottica. Thus, Luxottica's motion for a temporary restraining order (Doc. 2) is **GRANTED**. A temporary restraining order is warranted to maintain the status quo and prevent Defendants from continuing to copy, reproduce, possess, alter, distribute, disclose, use, or infringe upon Luxottica's trademarks and service marks,

legally protected under the Lanham Act and common law, (the "Pearle Vision Marks"), which include the following:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3492219 | *Pearle Vision* (stylized) | Retail optical services |
| 3492222 | *Pearle Vision* (green stylized) | Retail optical stores |
| 2349286 | PEARLE VISION | Retail optical stores |
| 1538542 | PEARLE vision center (oval logo) | Retail optical store, optometric and opticians' services |
| 4610638 | PEARLE EST. 1961 VISION | Retail optical store services, optician and optometric services |

13

| 4610549 | | Retail optical store services, optician and optometric services |
|---|---|---|
| 4548709 | | Retail optical store services, optician and optometric services |
| 3689264 | PEARLE VISION | Eyewear accessories; namely, cases, cords, and chains. |

Accordingly, the Court hereby **ORDERS** as follows:

1. Defendants are enjoined from advertising, displaying, or promoting any product or service bearing any of the Pearle Vision Marks, or any colorable imitation thereof, at its retail optical store.

2. Defendants are enjoined from displaying or using any of the Pearle Vision Marks to advertise or promote the sale of, or to identify, its retail optical store located at 70 Public Square, Elkton, Kentucky 40004 (the "Store"), or any product or service provided therein.

3. Defendants are enjoined from making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Bright Eyes, the Store, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Luxottica.

This temporary restraining order will remain in force and effect for 14 days, unless extended by agreement of the parties, or, for good cause shown, by further order of this Court

under Fed. R. Civ. P. 65(b)(2). Defendants have not yet alleged that they will suffer any particularized harm during the pendency of this short-term injunctive relief. Accordingly, the Court finds that no security is necessary at this juncture.[3] Fed. R. Civ. P. 65(c). This matter shall be set for a Preliminary Injunction Hearing on October 28, 2025, at 11:00 a.m.

**IT IS SO ORDERED.**

October 16, 2025

Jeffery P. Hopkins
United States District Judge

---

[3] In accordance with the License Agreement, Bright Eyes "consents to the entry of temporary and permanent injunctions of that type, and [] waives the posting of any bond by Pearle Vision in connection with those injunctions." Compl., Doc. 1, ¶ 30. Nonetheless, the Court may reconsider the issue of security at the Preliminary Injunction Hearing.